IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| VALERY ROZINSKY, | * |
| Plaintiff, | * |
| v. | * Civil Action No. RDB-15-2408 |
| ASSURANCE COMPANY OF AMERICA, | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

Plaintiff Valery Rozinsky ("Plaintiff" or "Mr. Rozinsky") has brought this one-count breach of contract action against Defendant Assurance Company of America ("Defendant" or "Assurance"), seeking uninsured/underinsured motorist ("UIM") benefits under a motor vehicle insurance policy issued by Assurance to his former employer, Milhouse, LLC d/b/a Edible Arrangements ("Edible Arrangements"). Mr. Rozinsky has filed this claim in connection with an October 22, 2012 automobile accident, in which he was seriously injured while driving a work van owned by Edible Arrangements. *See* Compl., ¶¶ 1-12, ECF No. 2. The parties agree that Mr. Rozinsky is entitled to UIM benefits as he was not at fault in the accident, and the other driver causing the accident had limited insurance coverage. It is further agreed that Mr. Rozinsky has incurred a total of $16,774.15 in medical expenses as a result of the accident and that he was out of work for approximately two years after the accident. Mr. Rozinsky lived and worked in Maryland at the time of the accident, but has since moved to Florida and now operates his own fingerprinting, drug testing, and medical

1

testing company.  Although he continues to feel pain in connection with his accident injuries, it does not interfere with his work, and the pain is limited to his left arm and neck. The parties have stipulated that Assurance is liable to Mr. Rozinsky for UIM benefits under the Milhouse, LLC d/b/a "Edible Arrangements" policy.  Accordingly, this case proceeded to a one-day bench trial before this Court on Tuesday, August 1, 2017 on the issue of damages alone, at which time this Court heard the testimony of two witnesses: Mr. Rozinsky himself and Kathy Stone, Mr. Rozinsky's expert in "vocational assessments," who testified that Mr. Rozinsky is *no longer employable* as a result of his accident injuries.

    For the reasons stated herein, and by stipulation of the parties, this Court now concludes that Defendant Assurance Company of America is liable to Plaintiff Valery Rozinsky under the Milhouse, LLC d/b/a "Edible Arrangements" uninsured/underinsured motorist ("UIM") policy.  Accordingly, Judgment shall be entered in favor of Mr. Rozinsky as to his claim for breach of contract.  As to damages, the only contested issue before this Court, this Court concludes that Mr. Rozinsky has suffered economic damages in the total amount of $73,272.55 as a result of his October 22, 2012 accident, including stipulated medical expenses of $16,774.15 and an undisputed $56,498.40 in lost wages over the approximately two years following the accident.  Although Mr. Rozinsky has sought an additional $149,093.00 for future lost wages, that shall not be awarded.  This Court is not persuaded by the testimony of Kathy Stone that Mr. Rozinsky is no longer employable.  On the contrary, he has in fact been employed as a fingerprint technician since September of 2014 and now operates his own fingerprinting, drug testing, and medical testing company. He has testified that his work, which includes packing and unpacking fingerprinting gear,

2

transporting his gear, traveling to meet customers, and guiding customers through the fingerprinting process, does not aggravate his accident injuries.

Additionally, this Court shall exercise its discretion to award non-economic damages for Mr. Rozinsky's pain and suffering as a result of the accident in the amount of $236,205.00. Although he *is employable*, it is undisputed that Mr. Rozinsky's injuries have reached maximum recovery and that he will continue to experience some pain for the rest of his life. Therefore, Assurance Company of America is liable to Plaintiff Valery Rozinsky in the total amount of $309,477.55.

Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, the following memorandum constitutes this Court's findings of fact and conclusions of law.

## PROCEDURAL HISTORY

Mr. Rozinsky filed this action in the Circuit Court for Baltimore County, Maryland, but Assurance has removed this case to this Court based on diversity of citizenship, pursuant to 28 U.S.C. § 1332. *See* Notice of Removal, ECF No. 1. Initially, Mr. Rozinsky brought a second count against Assurance, jointly with his wife, Galina Rozinsky, alleging loss of consortium in connection with the same accident and his subsequent injuries. Compl., ¶¶ 13-14, ECF No. 2. However, this Court has subsequently dismissed Court Two and, accordingly, has dismissed Galina Rozinsky as a party in this action with prejudice. *See* March 4, 2016 Mem. Opinion and Order, ECF Nos. 14 & 15; *Rozinsky v. Assurance Co. of Am.*, No. RDB-15-02408, 2016 WL 927147, at *1 (D. Md. Mar. 4, 2016). Additionally, prior to trial, Assurance moved to exclude the expert opinion testimony of Kathy Stone, Mr. Rozinsky's vocational assessments expert, under Rule 702 of the Federal Rules of Evidence.

*See* Mot., ECF No. 27.  This Court denied that motion via Memorandum Opinion and Order dated July 21, 2017 (ECF Nos. 30 & 31) although, as discussed herein, this Court ultimately finds Ms. Stone's testimony unpersuasive.  This case proceeded to a one-day bench trial before this Court on Tuesday, August 1, 2017 as to the amount of damages owed by Defendant Assurance Company of America to Plaintiff Valery Rozinsky under the Milhouse, LLC d/b/a "Edible Arrangements" uninsured/underinsured motorist ("UIM") policy.

FINDINGS OF FACT

Having conducted a one-day bench trial on August 1, 2017, having heard the testimony of Plaintiff Valery Rozinsky and Kathy Stone, Mr. Rozinsky's expert witness in "vocational assessments," and having considered the documentary evidence submitted by the parties, this Court makes the following findings of fact:

Plaintiff Valery Rozinsky ("Plaintiff" or "Mr. Rozinsky") was born on November 16, 1956 in the country of Moldova—at that time a republic of the former Soviet Union.  Trial Tr., p. 9.  He received what he has characterized as a "high school" education in that former Soviet republic and worked for a number of years in a state-operated shoe factory before joining the military, where he remained for two years and attained the rank of Sergeant.  *Id.* at 10-11.  At the conclusion of his military service, Mr. Rozinsky continued to work as a shoemaker.  *Id.*  Then, between 1989 and 1990, he immigrated to the United States by way of Vienna, Austria and Rome, Italy.  *Id.* at 11.  Mr. Rozinsky is now an America citizen.  Although he lived and worked in Maryland at the time of the accident discussed herein, he now resides in the state of Florida with his wife, Galina Rozinsky.  *Id.* at 12, 37.  Mr. Rozinsky is now sixty years old, although he was fifty-five at the time of the accident.

4

Upon arriving in the United States, Mr. Rozinsky worked as a painter for two years, from approximately 1990 to 1992. *Id.* at 12. In that time, he painted "[h]ouses, buildings, fence[s], whatever [he had] to paint." *Id.* He then worked for about 14 to 15 years as a taxi cab driver for the Yellow Cab and BWI Cab companies, often taking on "side jobs" in construction after airport traffic slowed in the wake of the September 11, 2001 terrorist attacks. *Id.* at 13. In 2006, Mr. Rozinsky left his work as a cab driver to open his own contracting business. *Id.* He completed a wide range of small construction jobs, including kitchen and bathroom remodeling, tiling, painting, wall moving, and wall installation. *Id.* That business closed as the economy slowed in late 2008, after which time he began working as a driver for Milhouse, LLC d/b/a Edible Arrangements ("Edible Arrangements"). *Id.*

On October 22, 2012, Mr. Rozinsky was completing a delivery for Edible Arrangements when another car struck his vehicle. *Id.* at 14. That other vehicle was driven by a man named Paris David, Sr., and it is undisputed that Mr. David was at fault in the accident. At that time, Mr. Rozinsky was driving a van owned by Edible Arrangements, and the impact of the collision caused the van to tip over onto its left side. *Id.*; Photographs of Accident Scene, Ex. 1. Emergency responders cut the van's windshield to remove Mr. Rozinsky from the vehicle and transported him to a hospital. *Id.* at 14-16. Mr. Rozinsky suffered chest pain after the accident, although that pain went away after six months. *Id.* at 17. Additionally, he experienced swelling and tingling in his left hand, pain in his left arm and shoulders, and neck pain. *Id.* at 17, 19-20. Despite physical therapy, cortisone treatments, and several epidural shots, Mr. Rozinsky still feels pain to this day. *Id.* at 17-18. Although doctors have given him the option of a complex spinal surgery that could

5

potentially alleviate his symptoms, he has declined. *Id.* at 18. It is undisputed that, absent surgery, Mr. Rozinsky's injuries have reached maximum recovery and that he will continue to experience some pain for the rest of his life, although he manages that pain with medication.

The parties have stipulated that Mr. Rozinsky incurred a total of $16,774.15 in medical expenses as a result of injuries sustained in the October 22, 2012 accident. *See* Stipulation of Fact, No. 1; Trial Tr., pp. 21-22. Additionally, Mr. Rozinsky's treating physicians did not permit him to return to work until after August 16, 2013, almost one year after the accident, and only then on "light duty," meaning "no lifting greater than 5 lbs and no prolonged head and neck positioning." *See* Physician Orders, Ex. 20.[1] The parties have stipulated that Mr. Rozinsky's average weekly wages at the time of the accident were $560.50. *See* Stipulation of Fact, No. 3. When Mr. Rozinsky did finally return to work after August 16, 2013, Edible Arrangements did not have any "light duty" work available. Trial Tr., pp. 34, 37; Stipulation of Fact, No. 5. Accordingly, around that time, Mr. Rozinsky and his wife moved to Florida, where his wife found a job working as a nurse. *Id.* at 37-38.

Mr. Rozinsky remained unemployed for the entire year following his August 16, 2013 authorization to return to work on "light duty." Finally, in September of 2014, Mr. Rozinsky began working as a fingerprint technician, initially as a contractor for a fingerprinting company. *Id.* at 38-41; Stipulation of Fact, No. 8. That job included collecting information from customers, rolling their fingers on an electronic device, and submitting their

---

[1] At trial, counsel for Assurance objected to the authenticity of the Physician Orders. *See* Trial Tr., pp. 24-25. For the reasons stated on the record, this Court overruled that objection and admitted the Physician Orders as Ex. 20. This Court found that the orders were self-authenticating "Commercial Paper and Related Documents" under Rule 902(9) of the Federal Rules of Evidence. They contain the seal of Kaiser Permanente, the signatures of Mr. Rozinsky's medical service providers, and Assurance presented no evidence suggesting that they were not authentic. *Id.* at 30.

information and prints to various government agencies for review. Trial Tr., p. 38. Additionally, Mr. Rozinsky was required to transport his fingerprinting equipment, including a laptop, scanner, power supply, and small camera, in a suitcase to and from various locations. *Id.* at 39-41; Photographs of Gear, Exs. 22A-C. He has continuously worked as a fingerprint technician since September of 2014 and is currently self-employed in that capacity. Stipulation of Fact, No. 7. Additionally, although Mr. Rozinsky began working as a contractor, he has since opened his own company, purchased his own equipment and licenses, and has expanded the operation to include medical and drug testing. *Id.* at 42.

Despite Mr. Rozinsky's present employment as a fingerprint technician, Kathy Stone, Mr. Rozinsky's expert in "vocational assessments," testified at the August 1, 2017 bench trial that Mr. Rozinsky is *no longer employable*, given his disability, age, and limited skills and education. Trial Tr., p. 69. Ms. Stone explained to this Court that she has conducted a "transferable skills analysis," whereby she has compared Mr. Rozinsky's physical limitations, as recorded in his medical records,[2] his education, and his skills with various jobs available in the marketplace. *Id.* at 67-69. She explained that, although Mr. Rozinsky is authorized to return to work on "light duty," defined as "a job that requires lifting up to 20 pounds on an occasional basis and frequently lifting up to 10 pounds," his limited education, particularly his lack of computer skills, renders him ineligible for the vast majority of otherwise suitable

---

[2] For the reasons stated on the record, this Court has admitted the medical records of Mr. Rozinsky into evidence (Ex. 16) over the Defendant's hearsay objection, but only as to the statements *made by Mr. Rozinsky* for the purpose of medical diagnosis, and not for the truth of any medical opinions rendered by his treating physicians in those documents, pursuant to Rule 803(4) of the Federal Rules of Evidence. *See, e.g., Doali-Miller v. SuperValu, Inc.,* 855 F. Supp. 2d 510, 513 (D. Md. 2012) (confirming this exception to the hearsay rule and explaining that "a declarant seeking treatment has a selfish motive to be truthful because the effectiveness of medical treatment depends upon the accuracy of the information provided.' ") (quoting *Willingham v. Crooke*, 412 F.3d 553, 562 (4th Cir. 2005)).

7

positions. *Id.* at 76-80. Although this Court has admitted Ms. Stone as an expert in "vocational assessments" and she has extensive experience in her field, this Court is ultimately unpersuaded by her conclusions in this case for the reasons discussed herein.

Although Ms. Stone has concluded that Mr. Rozinsky is not employable, Mr. Rozinsky himself has testified that he goes to work "every day" and plans to continue making a living as a fingerprint technician. Trial Tr., p. 43. He has testified that working as a fingerprint technician, and operating his own business, does not aggravate his arm or neck. *Id.* He has explained that his left-side injuries do not stop him from completing his duties because he can still lift with his right hand. *Id.* at 60. Additionally, his injuries sustained in the accident have not required medical treatment since August of 2013. *Id.* at 46-47. Furthermore, although Ms. Stone has based her assessment of Mr. Rozinsky's present disabilities in large part on a report submitted by Dr. Michael A. Franchetti, the parties have stipulated that Dr. Franchetti never personally evaluated or treated Mr. Rozinsky. *See* Stipulation of Fact, No. 10. Additionally, Ms. Stone acknowledged during cross examination that no restrictions have been placed on Mr. Rozinsky's ability to stand, sit, reach, or use his fingers, nor are his sight, hearing, or speaking restricted. Trial Tr., pp. 78-79.

Doctors Kevin McGovern and Kenneth Tepper have both examined Mr. Rozinsky in 2016 in preparation for this trial. Their reports have been entered into evidence, without objection. *See* Reports, Exs. 5 & 6. Dr. McGovern has stated that Mr. Rozinsky "gets by with over-the-counter medications as needed," his symptoms have remained stable, and that there has been "no worsening of his condition." McGovern Report, Ex. 5. Additionally,

Dr. Tepper has observed, among other things, that Mr. Rozinsky has full range of motion in his left shoulder and has been working "regular duty." Tepper Report, Ex. 6.

Despite clear evidence that Mr. Rozinsky is now working and is physically able to work, Ms. Stone defends her opinion that he is "unemployable" on the grounds that his business is not financially viable. She has reviewed Mr. Rozinsky's tax returns for the tax years 2014 through 2016, which have also been entered into evidence. They indicate that Mr. Rozinsky's business has netted a profit of $941.00 in 2014, a loss of $6,277 in 2015; and a loss of $31,945.00 in 2016. *See* Tax Returns, Exs. 10-12. Although it is true that Mr. Rozinsky has reported net business losses, Ms. Stone is not certified as an expert in business management, economics, or fingerprinting and testing. She admitted on cross examination that she is not an economist and cannot offer an opinion as to how much money Mr. Rozinsky has lost or should be earning in the future. Trial Tr., p. 73. Additionally, Ms. Stone has admitted that she is not qualified to render an expert opinion as to the profitability of Mr. Rozinsky's business or the reasonableness of his expenses. *Id.* at 84.

Mr. Rozinsky has explained his losses to this Court, many of which were necessary start-up costs. In 2014, he paid "royalt[ies]," a "leasing fee," "state fee" and "FBI fee." Trial Tr., p. 41. In 2015, he purchased approximately $10,000 of equipment. *Id.* at 42. In 2016, he expanded the business to fingerprinting, drug testing, and medical testing. *Id.* at 42. Additionally, he now leases office space for his business at the rate of $1,120 per month. *Id.* at 43, 58. Contrary to Ms. Stone's assessment, Mr. Rozinsky has testified that the business is "doing better" and has "repeat customers." *Id.* at 56-57. For all of these reasons, this Court concludes that Mr. Rozinsky *is in fact employable*.

CONCLUSIONS OF LAW

Mr. Rozinsky has brought this action against Assurance for "breach of its insurance contract." Compl., ¶ 12, ECF No. 2. Specifically, he seeks "damages resulting from the [October 22, 2012] collision," which "Assurance has refused to pay," in breach of the uninsured/underinsured motorist ("UIM") coverage provisions of the motor vehicle insurance policy it issued to Rozinsky's former employer, Milhouse, LLC d/b/a "Edible Arrangements." *Id.*, ¶¶ 1-12. "Federal courts exercising diversity jurisdiction apply the choice-of-law provisions of the forum state," in this case Maryland. *Ryan v. 21st Century Centennial Ins. Co.*, No. TDC-15-3052, 2016 WL 3647612, at *5 (D. Md. June 30, 2016) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, (1941)). "Maryland generally applies the doctrine of *lex loci contractus*, which provides that a contract dispute is governed by the law of the jurisdiction in which the contract was made." *Id.* (citing *Allstate Ins. Co. v. Hart*, 611 A.2d 100, 101 (Md. 1992)). The parties agree that Maryland contract law governs this dispute.[3]

The Court of Appeals of Maryland has held "in accordance with the great majority of jurisdictions in this country, that an action by an insured against his own insurance company for uninsured motorist benefits 'is clearly a contract action' and therefore is 'governed by the principles and procedures applicable to contract actions generally.' " *Lane v. Nationwide Mut. Ins. Co.*, 582 A.2d 501, 503 (Md. 1990) (quoting *Reese v. State Farm Mut. Auto. Ins. Co.*, 403 A.2d 1229, 1232 (Md. 1979)). To prevail on a breach of contract claim under Maryland law, "a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and

---

[3] Although Maryland state substantive law governs this dispute, this Court has recently confirmed in *MacSherry v. Sparrows Point, LLC, et al.*, No. ELH-15-22, 2017 WL 3315262, at *9 (D. Md. Aug. 3, 2017) that "federal courts apply federal procedural law" in "state law claims under diversity jurisdiction."

that the defendant breached that obligation." *Taylor v. NationsBank, N.A.*, 776 A.2d 645 (Md. 2001) (citation omitted). As discussed *supra*, the parties have stipulated that "Defendant [Assurance] is liable to Plaintiff [Mr. Rozinsky] under Milhouse, LLC's UIM policy." *See* Stipulation of Fact, No. 1. It is undisputed that Mr. Rozinsky was completing a delivery for his employer and driving his employer's vehicle at the time of the accident. Accordingly, Judgment shall be entered for Mr. Rozinsky on his breach of contract claim (Count One).[4]

With respect to damages, the only contested issue before this Court, Mr. Rozinsky has requested a total award of $222,365.55 in purely economic damages, itemized as follows:

- $16,774.15 – representing total medical expenses;

- $23,989.40 – representing the period of forty-two weeks and four days from October 23, 2012 through August 16, 2013, during which time Mr. Rozinsky was restricted from working in any capacity by his physicians following the accident, multiplied by his stipulated weekly average wages of $560.50 at the time of the accident;

- $32,509.00 – representing the approximately fifty-eight-week period during which Mr. Rozinsky was authorized to perform "light duty" work, but his employer had no such work available, multiplied by his stipulated weekly average wages of $560.50 at the time of the accident;

---

[4] As discussed *supra*, this Court has previously dismissed Count Two of the Complaint, Mr. Rozinsky's loss of consortium claim, brought jointly with his wife, Galina Rozinsky. *See* March 4, 2016 Mem. Opinion and Order, ECF Nos. 14 & 15; *Rozinsky v. Assurance Co. of Am.*, No. RDB-15-02408, 2016 WL 927147, at *1 (D. Md. Mar. 4, 2016).

11

- $149,093.00 – representing his remaining work life expectancy, approximately 266 weeks from November 1, 2014 through age sixty-five, multiplied by his stipulated weekly average wages of $560.50 at the time of the accident.

*See* Plaintiffs' Proposed Findings of Fact, ¶¶ 7-22.

During closing arguments at the August 1, 2017 bench trial, counsel for Assurance indicated that Assurance does not challenge the first three figures: damages for Mr. Rozinsky's stipulated medical expenses of $16,774.15; $23,989.40 for his time off work through August 16, 2013; and $32,509.00 in lost wages for the 58 weeks thereafter, during which time he was authorized for "light duty" work, but his employer had no such work available. *See* Trial Tr., p. 103. However, Assurance does object to Mr. Rozinsky's requested award of $149,093.00 for future lost wages from November 1, 2014 through age sixty-five, during which time he has been self-employed as a fingerprint technician. *Id.* at 103-104.

As discussed *supra*, although Mr. Rozinsky's expert, Kathy Stone, has testified that Mr. Rozinsky is no longer employable, this court finds, based on the evidence in the record and testimony presented at trial, that Mr. Rozinsky *is in fact employable*. Although he continues to experience pain as a result of the October 22, 2012 accident, he is able to use his right dominant hand without pain and has been able to work as a fingerprint technician since the fall of 2014. His responsibilities include packing and unpacking gear, transporting gear, traveling to meet customers, and guiding customers through the fingerprinting process. Drs. McGovern and Tepper, the medical professionals who have most recently assessed Mr. Rozinsky's physical condition, have concluded, among other things, that Mr. Rozinsky has full range of motion, his symptoms have stabilized, and that he has been working "regular

duty." *Id.* at p. 3. Although Mr. Rozinsky's fingerprinting and testing business has lost money in recent years, he has explained that those reported losses are largely a result of start-up expenses, including leasing office space, obtaining licenses, and purchasing expensive equipment. Although Ms. Stone opines that Mr. Rozinsky's business is likely to fail, she is not a certified expert in economics, business administration, or fingerprinting/and or drug testing. On the whole, the evidence indicates that Mr. Rozinsky is now employable.

For these reasons, this Court will award the full requested damages, agreed to by Assurance, for Mr. Rozinsky's stipulated medical expenses of $16,774.15; $23,989.40 for his time off work through August 16, 2013; and $32,509.00 in lost wages for the fifty-eight weeks thereafter, during which time he was authorized for "light duty" work, but his employer had no such work available. However, damages shall not be awarded for Mr. Rozinsky's future lost wages from November 1, 2014, by which time he had already begun working as a fingerprint technician, through the end of his projected work life. Accordingly, purely economic damages shall be awarded in the total amount of $73,272.55.

Mr. Rozinsky has additionally requested non-economic damages for his pain and suffering as a result of the accident. It is well-established that calculating an award of non-economic damages for pain and suffering is within this Court's discretion as the finder of fact in this bench trial. *See, e.g., Bugg v. Brown*, 246 A.2d 235, 239 (1968) ("It is well settled that a pecuniary basis need not be established to make pain and suffering compensable and the jury's determination of the amount thereof will not ordinarily be disturbed."). As noted *supra*, Mr. Rozinsky's vehicle was struck by another vehicle on October 22, 2012. The force of the collision forced the vehicle onto its left side, pinning Mr. Rozinsky's door.

13

Emergency responders had to extricate him from the vehicle by cutting the windshield. Mr. Rozinsky was then transported to the hospital and has suffered pain in his neck, left shoulder, and left hand ever since. It is undisputed that his injuries have reached maximum recovery and that he will continue to experience some pain for the remainder of his life. As compensation for his pain and suffering throughout this ordeal, this Court will award him an additional $236,205.00 in non-economic damages, representing $30.00 per day for every day since the accident through his remaining 17.5 years of expected life, that life expectancy figure having been assessed as of his sixtieth birthday last fall.[5] *See* Life Tables, Ex. 21. Accordingly, damages shall be awarded in the total amount of $309,477.55.

CONCLUSION

For the foregoing reasons, and by stipulation of the parties, this Court now concludes that Defendant Assurance Company of America is liable to Plaintiff Valery Rozinsky under the Milhouse, LLC d/b/a "Edible Arrangements" uninsured/underinsured motorist ("UIM") policy. Accordingly, Judgment shall be entered in favor of Mr. Rozinsky as to his claim for breach of contract. As to damages, the only contested issue before this Court, Assurance Company of America is liable to Plaintiff Valery Rozinsky in the total amount of $309,477.55, representing economic damages of $73,272.55 as a result of his October 22, 2012 accident, including stipulated medical expenses of $16,774.15 and an undisputed $56,498.40 in lost wages over the approximately two years following the accident, and an

---

[5] Kathy Stone testified at the bench trial that Mr. Rozinsky was presently 58 years old and, based on the Life Tables now in evidence (Ex. 21), had a life expectancy of 18.9 years. However, Mr. Rozinsky is in fact *sixty years old*. According to the Life Tables, his life expectancy as of his sixtieth birthday on November 16, 2016 is now 17.5 years. Therefore, this Court has awarded Mr. Rozinsky $30.00 per day for his remaining 17.5 years of life as of that date, as well as an additional $30.00 for each of the 1,486 days between the October 22, 2012 accident and Mr. Rozinsky's sixtieth birthday.

additional $236,205.00 in non-economic damages for Mr. Rozinsky's pain and suffering as a result of the accident. Although Mr. Rozinsky has sought an additional $149,093.00 for future lost wages, that shall not be awarded as he *is employable* and has in fact worked as a fingerprint technician since September of 2014, a job that does not aggravate his injuries.

A separate Order and Judgment follows.

Dated: August 7, 2017

_____/s/_____
Richard D. Bennett
United States District Judge